1  SUE CAMPBELL
   Attorney at Law
2  State Bar Number 98728
   1155 North First Street, Suite 101
3  San Jose, California 95112
   (408) 277-0648
4
   Attorneys for Plaintiffs
5

FILED

2007 JUN 25  A 9: 41  #8
Feos Pd
RICHARD W. WIEKING         SF
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S. J.
SM

6

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10 A.C. STEELMAN and FRAN MCDERMOTT,)   CASE NO.:
   TRUSTEES OF THE SACRAMENTO      )
11 AREA ELECTRICAL WORKERS         )   COMPLAINT FOR MONEY
   TRUST FUNDS,                     )   ON A BREACH OF
12                                  )   COLLECTIVE
                    Plaintiffs,     )   BARGAINING AGREEMENT
13                                  )   VIOLATION OF E.R.I.S.A. AND FOR
   vs.                             )   AN INJUNCTION
14                                  )
   JOHN EDWARD BRIGGS, JR.,        )
15 individually and doing business as )
   BRIGGS ELECTRIC,                )
16                                  )
                    Defendants.    )
17                                  )

18 _____

19        COME NOW Plaintiffs, by their attorney, Sue Campbell, and allege and show to the

20 Court as follows:

21        1. The jurisdiction of this Court is invoked pursuant to 29 U.S.C. Sections 185, 1132.

22        2. Plaintiffs A.C. STEELMAN and FRAN MCDERMOTT are trustees and fiduciaries

23 of the SACRAMENTO AREA ELECTRICAL WORKERS TRUST FUNDS.

24        3. The SACRAMENTO AREA ELECTRICAL WORKERS TRUST FUNDS hereinafter

25 "Funds", are Taft-Hartley funds as defined at 29 U.S.C. Section 186 and "employee pension

26 benefit plans" as defined at 29 U.S.C. Section 1002(1), (2). At all times mentioned herein, the

27 administrative offices for the Funds were and now are existing and operating in the State of

28 California, County of Alameda.

1

4. The Defendant JOHN EDWARD BRIGGS, JR., individually and doing business as BRIGGS ELECTRIC, is an employer as defined in 29 U.S.C. Section 1002(5). The Defendants were at all times mentioned herein and now are authorized to do business in the State of California, and further, that they are now authorized to do business and are actually doing business in the County of Sacramento, State of California.

5. At all times material hereto, there have been in full force and effect collective bargaining agreements covering the wages, hours and conditions of employment of certain employees of the Defendants. True and correct copies of the executed signature page and collective bargaining agreement are attached hereto and incorporated herein by reference as Exhibit A.

6. By its terms, the aforementioned collective bargaining agreement and the trust documents requires the Defendants to make payments to the Funds for each hour worked by employees covered by said collective bargaining agreement. The agreement further provides that such payments are to be made not later than the 15th day of each month following the month for which payment is made.

7. The aforementioned collective bargaining agreement also provides that the Defendant will abide by the terms of the Trust documents establishing the Funds, as well as the rules and regulations adopted by the trustees.

8. In accordance with the trust documents and rules and regulations of the Funds, as adopted by the trustees as well as the terms of the collective bargaining agreement, liquidated damages are assessed on late payments at the rate of 10% of the amount due if the payment is not received by the 15th of the month following the month incurred.

9. The aforementioned collective bargaining agreement further provides that if legal action must be taken to recover amounts due the Funds, the Defendant will pay the actual and reasonable attorney's fees incurred by the Funds, and all court costs. 29 U.S.C. Section 1132 also requires the Defendant to pay such fees and costs.

10. Pursuant to the terms of said agreement, there is now due, owing and unpaid from Defendants to Plaintiffs for the months of September 2006 through June 2007, an as yet

1  unascertained sum, plus liquidated damages according to contract; plus interest thereon at the

2  legal rate.

3      11. Pursuant to Article IV, Section 7, of the Sacramento Area Electrical Workers Health

4  and Welfare Trust Agreement, attached hereto as Exhibit "B," Defendant JOHN EDWARD

5  BRIGGS, JR., individually and doing business as BRIGGS ELECTRIC, has an obligation to

6  make books and records available for periodic audits thereto in order to determine the

7  compliance of the Defendant JOHN EDWARD BRIGGS, JR., individually and doing business

8  as BRIGGS ELECTRIC with its agreement regarding the payment of fringe benefit

9  contributions. That section states in pertinent part:

10      Section 7. The Trustees shall have the right themselves, or through any
        authorized representative, to audit the books and records of any
11      Employer as they may deem necessary in their discretion to determine
        if all liabilities of such Employer to the Trustees have been paid, and to
12      determine that the correct contributions have been received for all
        persons for whom such Employer is required to make contributions.
13      The Employer shall make such books and records available at all
        reasonable times and places, so that such audits may be conducted.
14
        In the event an Employer's books are audited as above set forth, the
15      Trustees shall have the right to charge said Employer the reasonable
        costs of said audit, if the audit reveals a delinquency.
16
        Should an Employer refuse or after a reasonable time fail to comply with
17      the request for an audit, the Trustees, in their sole discretion may initiate
        any appropriate legal proceedings to obtain a court order compelling
18      such defaulting Employer to such audit. In such event any and
        all court costs and fees, including reasonable attorney's fees, incurred by
19      the Trust shall be paid by such defaulting Employer.

20      12. The plaintiffs have performed all obligations owed to the defendant

21  through the referenced agreements.

22      13. Defendants have failed to provide required contribution forms showing the

23  amounts owed to the trust funds, constituting a breach of the above referenced

24  agreement. therefore Plaintiffs are requesting an audit of the contractor for the time

25  period January 1, 2002 through June 30, 2007.

26      14. The plaintiffs are informed and believe, and on such information and

27  believe allege, that defendant JOHN EDWARD BRIGGS, JR., individually and doing

28  business as BRIGGS ELECTRIC has failed to submit accurate fringe benefit

contributions as required under the above referenced agreements on behalf of the defendant's covered employees. The exact amount of said delinquency in payment of fringe benefits is not presently known to the plaintiffs, who will amend this complaint when the exact amount becomes known.

15. Article IV, Section 7, of the above referenced agreement provides that, in the event suit is instituted to enforce provisions of the trust agreements, defendants shall pay costs and reasonable attorney's fees. It has become necessary for the plaintiffs to employ Sue Campbell, attorney at law, as their attorney to prosecute the within action. If this lawsuit proceeds to default judgment, the attorney's fees shall be according to court schedule; if the matter should proceed to trial a reasonable fee for the attorney's services herein shall be according to proof.

16. Plaintiffs, through their agents, have made demand for payment but Defendants have failed to make any payments to date on the amount due.

17. On information and belief, additional monies are due for the periods January 1, 2002 to the present.

18. The obligation of the said Defendants, pursuant to the collective bargaining agreement set forth in Paragraph 6 above is a continuing obligation; Defendants may be continuing to breach said agreement by failure to pay monies due thereunder to Plaintiffs. The additional sums still due and owing, because of such breach, are presently unknown, but will be determined hereafter. In order to recover said additional sums in this action, Plaintiffs request that they be allowed to amend the complaint at or before the time of judgment to set forth said additional sums which may be due when said sums are determined and additional attorney's fees for collection thereof.

19. Plaintiffs' actual attorney's fees and costs will not be known until after this matter is concluded.

20. By reason of the aforementioned conduct of the Defendants, the Funds have suffered, and will continue to suffer, harm and actual and impending irreparable

4

loss in that monies will not be available to provide contractual benefits to participants and beneficiaries of the Funds; the Funds will suffer excessive administrative and legal costs in continuing attempts to collect monies not submitted on a timely basis; the Funds will not have the benefit of investment income on monies due to the Funds from these Defendants; and individual participants in the Fund will not receive their contractual benefits.

WHEREFORE, Plaintiffs pray this Court:

1. Award the Plaintiffs judgment for amounts due for the period September 2006 through June 2007, in an as yet unascertained sum, plus liquidated damages according to contract; plus interest thereon at the legal rate, plus an amount to be submitted to the Court at the time of entry of judgment as attorney's fees plus their costs and disbursements in this action, all pursuant to 29 U.S.C. Section 1132(g)(2);

2. For an Order compelling the defendants to submit books and records for an audit as may be necessary for the trustees to determine compliance with the above referenced agreements;

3. For an accounting;

4. For damages in an amount which is not presently known to the plaintiffs, who will amend this complaint when the exact amount of said damages becomes known;

5. Award to Plaintiffs such other relief as this Court shall deem appropriate.

Dated this 21 day of June 2007

SUE CAMPBELL
Attorney for Plaintiffs

# 2004 - 2008

## *Inside Wireman's Agreement*

Between
**Local Union 340
International Brotherhood of
Electrical Workers**
of
**Sacramento, Calif.**



and

**Greater Sacramento Chapter
National Electrical Contractors
Assn. Inc.**



and

**Other Individual Electrical Contractors
in the following counties of California:**

**Amador • Alpine • Butte • Colusa • El Dorado • Glenn • Lassen • Nevada • Placer • Plumas • Sacramento • Shasta • Sierra • Sutter • Tehema • Trinity • Yolo and Yuba**

These Counties West of the
Main Sierra Mountain Watershed.





# CENTRAL HEADQUARTERS

**Local Union 340**
2840 El Centro Road, Suite 115
Sacramento, California 95833
Phone: 916-927-4239

**Local Union 340 (North)**
900 Locust Street #7
Redding, California 96001
Phone: 530-241-2468

**Greater Sacramento Chapter**
**National Electrical Contractors Assn., Inc.**
3960 Industrial Blvd, Suite 200B
West Sacramento, California 95691-3496
Phone: 916-376-8980

**Health and Welfare Office**
2840 El Centro Road, Suite 114
Sacramento, California 95833
Phone: 916-923-0666

**Apprenticeship & Training**
2836 El Centro Road
Sacramento, California 95833
916-646-6688

TABLE OF CONTENTS

SECTION...........PAGE

ARTICLE I
EFFECTIVE DATE-CHANGES-GRIEVANCES-DISPUTES
I.4 - WORK STOPPAGE & LOCKOUT...........4
I.5 - GRIEVANCES-DISPUTES/L.M.C...........5

ARTICLE II
EMPLOYER RIGHTS-UNION RIGHTS
II.3 - WORKERS COMPENSATION INSURANCE...........6
II.4 - BONDING...........6
II.5 - JOINT VENTURE...........6
II.7 - SCOPE OF WORK...........7
II.8 - EMPLOYER DESIGNATED TO WORK...........8
II.9 - PORTABILITY...........8
II.10 - LOANING OF EMPLOYEES...........9
II.14 - STEWARDS...........9
II.15 - UNION ACCESS...........10
II.16 - EMPLOYEE RIGHTS (PICKETING)...........10
II.18 - TOOL LIST...........10
II.20 - UNION SECURITY CLAUSE...........11
II.28 - USE OF PERSONAL VEHICLE...........12
II.32 - OVERTIME ALLOTMENT...........13
II.34 - REPORTING PAY...........13
II.38 - EMPLOYERS RIGHTS OF QUALIFICATION...........14
II.39 - FOREMAN CALL BY NAME...........14

ARTICLE III
HOURS-WAGES-WORKING CONDITIONS
III.1 - WORKING HOURS...........15
III.2 - HOLIDAYS...........15
III.3(D) -PAYROLL REMOVAL NOTICE...........17
III.5 - TRAVEL TIME-EXPENSES-SUBSISTENCE...........18
III.8 - SUPERVISION...........20
III.9 - LAYOFF / SHOW UP-TIME...........21
III.10- SHIFT PROVISIONS...........22
III.12- WELDERS PAY...........24
III.14- PARKING...........24

ARTICLE IV
REFERRAL PROCEDURE
IV.3 - EMPLOYER RIGHT TO REJECT...........25
IV.5 - REGISTER OF APPLICANTS...........25
IV.9 - RESIDENT (DEFINITION)...........26
IV.12- SHORT CALL...........27

1

ARTICLE V
APPRENTICESHIP AND TRAINING

V.1 · LOCAL JATC.................................................28
V.3 · APPRENTICE DISPUTES & RESOLVE ..................29
V.8 · APPRENTICE JOB ASSIGNMENTS & TRANSFERS ........30
V.12 · JOBSITE APPRENTICE RATIO.............................32
V.13 · APPRENTICE SUPERVISON...............................32
V.16 · JATC CONTRIBUTIONS....................................33

ARTICLE VI
FRINGES & SAVINGS

VI.1 · NEBF ......................................................33
VI.2 · LOCAL PENSION ..........................................34
VI.3 · HEALTH & WELFARE......................................35
VI.5 · SAVINGS ..................................................36

ARTICLE VII
CONTRACT ADMINISTRATION FUND

VII · CONTRACT ADMINISTRATION FUND......................38

ARTICLE VIII
LOCAL (LMCC)

VIII · LOCAL (LMCC)............................................39

ARTICLE IX
NATIONAL (LMCC)

IX · NATIONAL (LMCC)........................................40

ARTICLE X
SAFETY

X.1 · JOINT SAFETY COMMITTEE ..............................42
X.4 · SAFETY (ENERGIZED CIRCUITS)........................42
X.5 · CABLE SPLICING (ENERGIZED CIRCUITS)...............43
X.6 · POWDER ACTUATED TOOLS...............................43

ARTICLE XI
SUBSTANCE ABUSE

XI · SUBSTANCE ABUSE .......................................43

ARTICLE XII
TUNNEL WORK

XII · TUNNEL WORK ...........................................44

WAGE APPENDIX.............................. INSIDE BACK COVER

2

## INSIDE WIREMAN'S AGREEMENT

Agreement by and between SACRAMENTO ELECTRICAL CONTRACTOR'S ASSOCIATION, INC. and LOCAL UNION NO. 340, I.B.E.W.

It shall apply to all firms who sign a Letter of Assent to be bound by this Agreement.

As used hereinafter in this Agreement, the term "Employer" shall mean the Sacramento Electrical Contractors Association, Inc. and the term "Union" shall mean Local Union No. 340, IBEW.

The term "Employer" shall mean an individual firm who has been recognized by an assent to this Agreement.

## BASIC PRINCIPLES

The Employer and the Union have a common and sympathetic interest in the Electrical industry. Therefore, a working system and harmonious relations are necessary to improve the relationship between the Employer, the Union and the Public. Progress in industry demands a mutuality of confidence between the Employer and the Union. All will benefit by continuous peace and by adjusting any differences by rational, common sense methods. Now, therefore, in consideration of the mutual promises and agreements herein contained, the parties hereto agree as follows:

## ARTICLE I

### EFFECTIVE DATE - CHANGES - GRIEVANCES - DISPUTES

#### I.1
This Agreement shall take effect June I, 2004 and shall remain in effect until May 3l, 2008, unless otherwise specifically provided for herein. It shall continue in effect from year to year thereafter, from June I through May 3l of each year, unless changed or terminated in the way later provided herein.

#### I.2 (A)
Either party or an Employer withdrawing representation from the Chapter or not represented by the Chapter, desiring to change or terminate this Agreement must provide written notification at least 90 days prior to the expiration date of the Agreement or any anniversary date occurring thereafter.

3

**I.2 (B)**

Whenever notice is given for changes, the nature of the changes desired must be specified in the notice, or no later than the first negotiating meeting unless mutually agreed otherwise.

**I.2 (C)**

The existing provisions of the Agreement, including this Article, shall remain in full force and effect until a conclusion is reached in the matter of proposed changes.

**1.2 (D)**

Unresolved issues or disputes arising out of the failure to negotiate a renewal or modification of this Agreement that remain on the 20th of the month preceding the next regular meeting of the Council on Industrial Relations for the Electrical Contracting Industry (CIR) may be submitted jointly or unilaterally to the Council for adjudication. Such unresolved issues or disputes shall be submitted no later than the next regular meeting of the Council following the expiration date of this Agreement or any subsequent anniversary date. The Council's decision shall be final and binding.

**I.2 (E)**

When a case has been submitted to the Council, it shall be the responsibility of the negotiating committee to continue to meet weekly in an effort to reach a settlement on the local level prior to the meeting of the Council.

**I.2 (F)**

Notice of a desire to terminate this Agreement shall be handled in the same manner as a proposed change.

**I.3**

This Agreement shall be subject to change or supplement at any time by mutual consent of the parties hereto. Any such change or supplement agreed upon shall be reduced to writing, signed by the parties hereto, and submitted to the International Office of the I.B.E.W. for approval, the same as this Agreement.

**I.4**

There shall be no stoppage of work either by strike or lockout because of any proposed changes in this Agreement or dispute over matters relating to this Agreement. All such matters must be handled as stated herein.

**I.5**

There shall be a Labor-Management Committee of three representing the Union and three representing the Employers. It shall meet regularly at such stated times as it may decide. However,

4

it shall also meet within 48 hours when notice is given by either party. It shall select its own Chairman and Secretary. The Local Union shall select the Union representatives and the Chapter shall select the Management representatives.

**1.6**

All grievances or questions in dispute shall be adjusted by the duly authorized representative of each of the parties to this Agreement. In the event that these two are unable to adjust any matter within 48 hours, they shall refer the same to the Labor-Management Committee.

**I.7**

All matters coming before the Labor-Management Committee shall be decided by majority vote. Four members of the Committee, two from each of the parties hereto, shall be a quorum for the transaction of business, but each party shall have the right to cast the full vote of its membership and it shall be counted as though all were present and voting.

**I.8**

Should the Labor-Management Committee fail to agree to adjust any matter, such matter shall then be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding.

**I.9**

When any matter in dispute has been referred to conciliation or arbitration for adjustment, the provisions and conditions prevailing prior to the time such matter arose shall not be changed or abrogated until agreement has been reached or a ruling has been made.

## ARTICLE II

## EMPLOYER RIGHTS - UNION RIGHTS

**II.1**

Certain qualification, knowledge, experience and financial responsibility are required of everyone desiring to be an Employer in the Electrical Industry. Therefore, "Employer" as used herein is defined to mean a person, firm or corporation having these qualifications: maintaining a permanent place of business and a suitable financial status to meet payroll requirements and having one journeyman electrician in his/her employ. The Employer's place of business shall have a permanent sign bearing the firm name, which must be legible from the street, a business telephone, and be open to the public during normal business hours.

5

## II.1 (A)

Employer member of any firm is hereby defined as owner, partner, employee, stockholder, officer or person qualifying as Responsible Managing Officer or Responsible Managing Employee under the State Contractor's License Law of California. Avoidance of the intent of this provision shall not be permitted by the pretense of ownership of the business by an immediate member of the family.

## II.2

The Union understands the Employer is responsible to perform the work required by the Owner. The Employer shall, therefore, have no restrictions except those specifically provided for in the Collective Bargaining Agreement, in planning, directing and controlling the operation of all his/her work, in deciding the number and kind of Employees to properly perform the work, in hiring and laying off Employees, in transferring Employees from job to job within the Local Union's geographical jurisdiction, in determining the need and number as well as the person who will act as Foreman, in requiring all Employees to observe the Employer's and/or Owner's rules and regulations not inconsistent with this Agreement, in requiring all Employees to observe all safety regulations, and in discharging Employees for proper cause.

## II.3

For all Employees covered by this Agreement, the Employer shall carry Workers' Compensation Insurance, with a company authorized to do business in this State, comply with the Federal Insurance Contributions Act and the California Unemployment Insurance Act and all other protective insurance as may be required by the laws of this State or the Federal Government and upon request, shall furnish satisfactory proof of such compliance to the Union.

## II.4

Any Employer doing business in the jurisdiction of Local Union 340, I.B.E.W., must supply to the Local Union a bond in the amount of $10,000 to indemnify any Employee or union for non-payment of any wages and/or fringe benefits by the Employer. Any Employer whose bond is defaulted, may at the discretion of the Union, be required to increase the bond by the amount of five thousand dollars ($5,000) each occurrence.

## II.5

Employers engaged in joint-venture jobs shall be considered as a new and separate individual Employer, with all rights herein as apply to an individual participating Employer. There shall be no

6

transfer of Employees between a joint-venture and any or all of the Employers comprising the joint-venture.

## II.6

The Union agrees that if, during the life of this Agreement, it grants to any other Employer in the Electrical Contracting Industry on work covered by this Agreement, any better terms or conditions than those set forth in this Agreement, such better terms or conditions shall be made available to the Employer under this Agreement and the Union shall immediately notify the Employer of any such concession.

## II.7   SCOPE OF WORK

If the Employer performs any of the following work with its own Employees, it shall be performed under the terms and conditions of this Agreement. Installation or erection work, and all electrical maintenance, including the final running test on electrical equipment shall be the work of the Inside Wireman. This shall include the installation and maintenance of temporary electrical lighting, heating and power equipment. Such work includes but is not limited to the following:

Fixtures: includes the installation and/or the connecting of all fixtures, control devices, appliances; motors, motor generators and energy producing devices.

Raceways: raceways or conduit systems shall include all such systems (other than structural) which are designed to carry or contain electrical conductors (power, communications and signal) to be installed or for conductors to be installed in the future.

Supports: includes all such work (other than structural) as welding, burning, brazing, bending, core drilling and shaping of all copper, channel iron, angle iron, eye beams, and brackets, trays and embedded supports, that form a necessary part of the installation and erection of the electrical system.

Solar and energy producing devices such as, but not limited to Electronic: photovoltaic or fuel cells, equipment, electronic devices and light emitting or controlling devices. It is further understood that should any technical development or improvement replace any of the above or related methods or systems, that the substitute system or control system shall be treated the same as the system it replaces, with respect to the installation, maintenance and testing, i.e. floor tape wiring, optic fiber dimmers, energy management systems, micro-volt controls and plastic flex. Any dispute arising from this paragraph shall be processed per Article I.4.

The Employer recognizes the Union as the sole and exclusive representative of all its Employees performing work within the

7

the register satisfying the applicable age requirements provided; however, that all names in higher priority Groups, if any, shall first be exhausted before such overage reference can be made.

### IV.15
An Appeals Committee is hereby established composed of one member appointed by the Union, one member appointed by the Employer, and a Public Member appointed by both of these members.

### IV.16
It shall be the function of the Appeals Committee to consider any complaint of any Employee or applicant for employment arising out of the administration by the Local Union of Sections IV.4 through IV.14 of this Agreement. The Appeals Committee shall have the power to make a final and binding decision on any such complaint, which shall be complied with by the Local Union. The Appeals Committee is authorized to issue procedural rules for the conduct of its business, but it is not authorized to add to, subtract from, or modify any of the provisions of this Agreement and its decisions shall be in accord with this Agreement.

### IV.17
A representative of the Employer who is designated to the Union in writing, shall be permitted to inspect the Referral Procedure records at any time during normal business hours.

### IV.18
A copy of the Referral Procedure set forth in this Agreement shall be posted on the Bulletin Board in the offices of the Local Union and in the offices of the Employers who are parties to this Agreement.

### IV.19
Apprentices shall be hired and transferred in accordance with the apprenticeship provisions of the Agreement between the parties.

## ARTICLE V
## APPRENTICESHIP AND TRAINING

### V.1
There shall be a Local Joint Apprenticeship and Training Committee (JATC) consisting of a total of either 6 or 8 members who shall also serve as trustees to the local apprenticeship and training trust. An equal number of members (either 3 or 4) shall be appointed, in writing, by the local chapter of the National

Electrical Contractors Association (NECA) and the Local Union of the International Brotherhood of Electrical Workers (IBEW).

The local apprenticeship standards shall be in conformance with national guideline standards and industry policies to ensure that each apprentice has satisfactorily completed the NJATC required hours and course of study. All apprenticeship standards shall be registered with NJATC before being submitted to the appropriate registration agency.

The JATC shall be responsible for the training of apprentices, journeymen, installers, technicians, and all other (unindentured, intermediate journeymen, etc.)

### V.2
All JATC member appointments, reappointments and acceptance of appointments shall be in writing. Each member shall be appointed for a 3-year term, unless being appointed for a lesser period of time to complete an unexpired term. The terms shall be staggered, with one (1) term from each side expiring each year. JATC members shall complete their appointed term unless removed for cause by the party they represent or they voluntarily resign. All vacancies shall be filled immediately.

The JATC shall select from its membership, but not both from the same party, a Chairman and a Secretary who shall retain voting privileges. The JATC will maintain one (1) set of minutes for JATC committee meetings and a separate set of minutes for trust meetings.

The JATC should meet on a monthly basis, and also upon the call of the Chairman.

### V.3
Any issue concerning an apprentice or an apprenticeship matter shall be referred to the JATC for its review, evaluation and resolve; as per standards and policies. If the JATC deadlocks on any issue, the matter shall be referred to the Labor-Management Committee for resolution as outlined in Article I of this Agreement; except for trust fund matters, which shall be resolved as stipulated in the local trust instrument.

### V.4
There shall be only one (1) JATC and one (1) Local Apprenticeship and Training Trust. The JATC may, however, establish joint subcommittees to meet specific needs, such as residential or telecommunications apprenticeship. The JATC may also estab-

28

29

lish a subcommittee to oversee an apprenticeship program within a specified area of the jurisdiction covered by this Agreement.

All subcommittee members shall be appointed, in writing, by the party they represent. A subcommittee member may or may not be a member of the JATC.

### V.5

The JATC may select and employ a part-time or a full-time Training Director and other support staff, as it deems necessary. In considering the qualifications, duties and responsibilities of the Training Director, the JATC should review the Training Director's job description provided by the NJATC. All Employees of the JATC shall serve at the pleasure and discretion of the JATC.

### V.6

To help ensure diversity of training, provide reasonable continuous employment opportunities and comply with apprenticeship rules and regulations, the JATC, as the program sponsor, shall have full authority for issuing all job-training assignments and for transferring apprentices from one Employer to another. The Employer shall cooperate in providing apprentices with needed work experiences. The Local Union referral office shall be notified, in writing, of all job-training assignments. If the Employer is unable to provide reasonable continuous employment for apprentices, the JATC is to be so notified.

### V.7

All apprentices shall enter the program through the JATC as provided for in the registered apprenticeship standards and selection procedures. An apprentice may have their indenture canceled by the JATC at any time prior to completion as stipulated in the registered standards. Time worked and accumulated in apprenticeship shall not be considered for local union referral purposes until the apprentice has satisfied all conditions of apprenticeship. Individuals terminated from apprenticeship shall not be assigned to any job in any classification, or participate in any related training, unless they are reinstated in apprenticeship as per the standards, or they qualify through means other than apprenticeship, at sometime in the future, but no sooner than two years after their class has completed apprenticeship, and they have gained related knowledge and job skills to warrant such classification.

### V.8

The JATC shall select and indenture a sufficient number of apprentices to meet local manpower needs. The JATC is authorized

to indenture the number of apprentices necessary to meet the job site ratio as per Section V.12.

### V.9

Though the JATC cannot guarantee any number of apprentices; if a qualified Employer requests an apprentice, the JATC shall make every effort to honor the request. If unable to fill the request within ten (10) working days, the JATC shall select and indenture the next available person from the active list of qualified applicants. An active list of qualified applicants shall be maintained by the JATC as per the selection procedures.

### V.10

To accommodate short-term needs when apprentices are unavailable, the JATC shall assign unindentured workers who meet the basic qualifications for apprenticeship. Unindentured workers shall not remain employed if apprentices become available for OJT assignment. Unindentured workers shall be used to meet jobsite ratios except on wage-and-hour (prevailing wage) jobsites.

Before being employed, the unindentured person must sign a letter of understanding with the JATC and the Employer, agreeing that they are not to accumulate more than two thousand (2,000) hours as an unindentured, that they are subject to replacement by indentured apprentices and that they are not to work on wage-and-hour (prevailing wage) jobsites.

Should an unindentured worker be selected for apprenticeship, the JATC will determine, as provided for in the apprenticeship standards, if some credit for hours worked, as an unindentured will be applied toward the minimum OJT-hours of apprenticeship.

The JATC may elect to offer voluntary related training to unindentured; such as Math Review, English, Safety, Orientation/Awareness, Introduction to OSHA, First-aid and CPR. Participation shall be voluntary.

### V.11

The Employer shall contribute to the Local Health and Welfare Plans and to the National Electrical Benefit Fund (NEBF) on behalf of all apprentices and unindentured. Contributions to other benefit plans may be addressed in other sections of this Agreement.

**V.12**

Each jobsite shall be allowed a ratio of two (2) apprentices for every three (3) Journeyman Wiremen or fraction thereof as illustrated below.

| Number of Journeymen | Maximum of Apprentices/Unindentured |
|---|---|
| 1 to 3 | 2 |
| 4 to 6 | 4 |
| etc. | etc. |

The first person assigned to any jobsite shall be a Journeyman Wireman.

A jobsite is considered to be the physical location where Employees report for their work assignments. The Employer's shop (service center) is considered to be a separate, single jobsite. All other physical locations where workers report for work are each considered to be a single, separate jobsite.

**V.13**

An apprentice is to be under the supervision of a Journeyman Wireman at all times. This does not imply that the apprentice must always be in-sight-of a Journeyman Wireman. Journeymen are not required to constantly watch the apprentice. Supervision will not be of a nature that prevents the development of responsibility and initiative. Work may be laid out by the Employer's designated Supervisor or Journeyman based on their evaluation of the Apprentice's skills and ability to perform the job tasks. Apprentices shall be permitted to perform job tasks in order to develop job skills and trade competencies. Journeymen are permitted to leave the immediate work area without being accompanied by the apprentice.

Apprentices who have satisfactorily completed the first four years of related classroom training using the NJATC curriculum and accumulated a minimum of 6,500 hours of OJT with satisfactory performance, shall be permitted to work alone on any jobsite and receive work assignments in the same manner as a Journeyman Wireman. An apprentice shall not be the first person assigned to a jobsite and apprentices shall not supervise the work of others.

**V.14**

Upon satisfactory completion of apprenticeship, the JATC shall issue all graduating apprentices an appropriate diploma from the NJATC. The JATC shall encourage each graduating apprentice to apply for college credit through the NJATC. The JATC may also require each apprentice to acquire any electrical license

32

required for journeymen to work in the jurisdiction covered by this Agreement.

**V.15**

The parties to this Agreement shall be bound by the Local Joint Apprenticeship and Training Trust Fund Agreement which shall conform to Section 302 of the Labor-Management Relations Act of 1947 as amended, ERISA and other applicable regulations.

The Trustees authorized under this Trust Agreement are hereby empowered to determine the reasonable value of any facilities, materials or services furnished by either party. All funds shall be handled and disbursed in accordance with the Trust Agreement.

**V.16**

All Employers subject to the terms of this Agreement shall contribute the amount of funds specified by the parties signatory to the Local Apprenticeship and Training Trust Agreement. The current rate of contribution is $.86 per hour for each hour worked. This sum shall be due the Trust Fund by the same date as is their payment to the NEBF under the terms of the Restated Employees' Benefit Agreement and Trust.

## ARTICLE VI

## FRINGES AND SAVINGS

**VI.1  N.E.B.F.**

It is agreed that in accord with the Employees' Benefit Agreement of the National Electrical Benefit Fund ("NEBF"), as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers, on September 3, 1946, as amended, and now delineated as the Restated Employees' Benefit Agreement and Trust, that unless authorized otherwise by the NEBF, the individual Employer will forward monthly to the NEBF's designated local collection agent, an amount equal to three percent (3%) of the gross monthly labor payroll paid to, or accrued by, the Employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by suit initiated by the NEBF or its assignee. The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.

33

The individual Employer hereby accepts, and agrees to be bound by, the Restated Employees' Benefit Agreement and Trust.

An individual Employer who fails to remit as provided above shall be additionally subject to having their Agreement terminated upon seventy-two (72) hours notice in writing being served by the Union, provided the individual Employer fails to show satisfactory proof that the required payments have been paid to the appropriate local collection agent.

The failure of an individual Employer to comply with the applicable provision of the Restated Employees' Benefit Agreement and Trust shall also constitute a breach of their Labor Agreement.

## VI.2    PENSION
The Employer shall pay the sum of $2.25 per hour worked by each Employee covered by this Agreement into the Sacramento Area Electrical Worker's Pension Trust Fund. The Trustees are authorized by this Agreement to enter into reciprocity of pension benefits with other pension trusts. Apprentice pension contribution shall be based on the percentage level of the apprentice. Local pension contributions are not required for 40 and 45% apprentices.

All journeyman and qualified apprentices-unless otherwise permitted subsequent to application-shall be classified at the "A" wage rate. All wage classifications are subject of good faith collective bargaining. Annually, during the month of December, each journeyman or qualified apprentice may submit an application, subject to approval by the local union, to be reclassified under the terms of the collective bargaining agreement. Eligibility for classifications of the plan shall be subject to the discretion of the local union. Said discretion shall be exercised in a fair and impartial manner. Reclassifications may take place only once per year as provided herein regardless of the number of times a covered employee changes employers and will take effect by issuance of a dispatch notice.

Notwithstanding the foregoing, all employers who on June 1, 1999, were contributing money to the Shasta Butte Electrical Workers Pension Trust shall, of the amounts contributed for Pension, continue to contribute $2.00 per hour to the Shasta Butte Electrical Workers Pension Trust for all employees who had elected reciprocity from the Sacramento Area Electrical Workers Pension Trust to the Shasta Butte Electrical Workers Pension Trust on or before August 1, 1999. Said contribution shall be credited to the Defined Benefit Plan of the Shasta Butte Electri-

34

cal Workers Pension Trust. A list of contributing contractors and participant employees this provision applies to is available at the pension trust administrative office.

## VI.3    HEALTH & WELFARE
The Employer and Local Union 340 of the I.B.E.W. realize and agree that Employees covered by this Agreement should have the benefits and protection of a jointly operated Health and Welfare Trust, and hereby agree to provide for such in the following manner:

### VI.3 (A)
It is mutually agreed between the parties hereto, effective on the first day of June, 2004, each Employer will forward the sum of five dollars and eighty-three cents ($5.83) per hour for each hour worked by each of the Employees employed on work covered by this Agreement to the Sacramento Area Electrical Workers Health and Welfare Trust. The Supplemental Plan, which is currently $.50 (included in the above amount), shall be based on the percentage level of the apprentice, i.e. 50% apprentice-pay $.25, 60% apprentice-pay $.30.

### VI.3 (B)
The Employer shall make such payment monthly on a form provided for that purpose, and will comply with all provisions of the Agreement and Declaration of Trust covering Employer's payments and application of Funds. Said contribution shall be paid by the Employer to be held in trust by the Trustees for the purpose of providing benefits for Employees and their dependents.

### VI.3 (C)
The records of the Trust Fund shall show a breakdown of total receipts from Employers for credit to the account set forth above, and all disbursement made therefrom.

### VI.3 (D)
The jointly operated Fund shall be administered by the Trustees in accordance with terms of the Trust Agreement established by the Labor-Management Committee and approved by the applicable governmental agencies.

## VI.4    VACATION
Annual time off for vacations for all Employees subject to this Agreement shall be scheduled in accordance with the following rules:

### VI.4 (A)
It is the intention that vacations should, as far as possible, be taken by each Employee in accordance with recognized vacation

35

practices. It is recognized that this may not always be practical, due to the necessities of particular jobs, sickness or other sufficient reasons, and it may be necessary in such cases to make vacation arrangements to fit the needs of each particular shop or job.

### VI.4 (B)

Not more than twenty percent (20%) of the Employees in any shop or any job shall be granted their vacations for the same time unless agreed to by the Employer.

### VI.5 SAVINGS

The Employer shall make a payroll deduction of twenty percent (20%)*(or twelve percent (12%) at the option of the Employee) after all taxes have been deducted from the gross labor payroll of each Employee for the purpose of an individual savings for each Employee. The amount of savings deduction shall be shown on payroll check stubs and included in the monthly transmittal made by Employers to report fringe benefit monies. Duplicate copies of Employer transmittal reports shall be available to Local Union 340, I.B.E.W.

*This change may only be done once a year, effective January 1st.

### VI.5 (A)

The savings accounts shall be established with either of the following depositories provided they are in compliance with VI.5 (B) below:
1. A depository selected by the Trustees of the Health and Welfare

or

2. Heritage Community Credit Union
   PO Box 790
   Rancho Cordova CA 95741

### VI.5 (B)

The depository for such savings accounts shall certify that each member account will continue to be insured to the maximum amount provided by federal laws governing such depository.

### VI.5 (C)

Each Employee shall submit to the Health and Welfare Trust a written statement designating the depository in which he/she wishes his/her individual savings account established, and authorize the Health and Welfare Trust to make payments to that depository, as called for in this section. The depository designated by the Employee shall be either (1) or (2) above. Said written authorization shall include a clause, which states:

36

'The undersigned Employee, in consideration of being permitted to designate the depository in which he/she desires his/her individual savings account established, promises to hold the Union and Employer harmless from any and all claims, demands or liability whatsoever, including but not limited to attorney's fees, arising out of the payment, holding, or distribution of these sums from the depository of the Employee's choice or Trustees choice.'

If the Employee refuses to submit a signed, written authorization, containing the clause above, the Employer shall be required to make the payments to the Health and Welfare Trust as called for in this section.

### VI.6

Employer reports and payments for Savings, Health and Welfare, Training Funds, Local Pension Fund and NEBF, shall be due and payable immediately following the last weekly payroll period in the month accrued and shall become delinquent if not paid by the fifteenth (15th) day of the following month.

### VI.7

Individual Employers who fail to remit as provided in this section, shall be additionally subject to having this Agreement terminated upon seventy-two (72) hours' notice, in writing, being served by the Union, provided the individual Employer fails to show satisfactory proof that the required payments have been made.

### VI.8

Employer transmittals (contribution reports) and payments for Savings, Health and Welfare Trust, Public Relations Trust, Joint Apprenticeship and Training Trust, Local Pension Trust, Contract Administration and NEBF, shall be due and payable immediately following the last weekly payroll in the month accrued and shall become delinquent if not paid by the 15th day of the following month. Said delinquencies shall require the additional charge of liquidated damages as required by the Trust Agreements governing the individual trusts.

By signing this Collective Bargaining Agreement, the Employer agrees to be bound by all the provisions of the Sacramento Area Electrical Workers Health and Welfare Trust Fund, Pension Trust Fund, Joint Apprenticeship Training Trust Fund, Public Relations Trust, Contract Administration, as well as the provisions of the Trust Agreement regulating the National Employee Benefit Fund.

37

**VI.9**

In order to protect and preserve, for the employees covered by this Agreement, work heretofore performed by them it is hereby agreed as follows: When the Employer shall perform any on-site construction work of the type covered by this Agreement, under its own name or under the name of another, (as a corporation, company or partnership, including a joint-venture) wherein the Employer, through its controlling officer or partner exercises management's control, the terms and conditions of this Agreement shall be applicable to such work. Violations of this Section shall be considered a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

**VI.9 (A)**

As a remedy for violations for this Section, the Labor-Management Committee, the Council of Industrial Relations for the Electrical Contracting Industry and/or an independent arbitrator, as the case may be, are empowered, in their discretion and at the request of the Union or the Employer to review any dispute or to require an Employer to (1) pay to affected Employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such Employees as a result of the violations; and (2) pay into the affected joint trust funds established under this Agreement any delinquent contributions to such funds which have resulted from the violations, or any mutual agreed sums or settlement.

**VI.9 (B)**

If, as a result of violations of this Section, it is necessary for the Employer, Union and/or the trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with subsection (A) above, to defend an action which seeks to vacate such award, or to petition to vacate such award, the prevailing party shall be awarded any accountant's and attorney's fees incurred plus cost of litigation, which have resulted from the bringing of such court action.

## ARTICLE VII

## CONTRACT ADMINISTRATION FUND

**VII.**

The Local Contract Administration Fund shall be administered solely by the Sacramento Electrical Contractors Association, Inc. and shall be utilized to administer this Agreement between Local Union #340 and S.E.C.A. In addition, it may cover the cost

38

of negotiations, public relations, advertising programs, contract specification improvement, and promotion of better service to the general public. However, it shall not be limited to these items, it shall be the duty of all Employers signatory to this Agreement to promptly pay, as set forth in this Collective Bargaining Agreement. The individual Employer will forward monthly to the Local Health & Welfare Office 1.60% of their gross monthly payroll, which they are obligated to pay to the Employees in this bargaining unit, and a completed payroll report prescribed by the Board of Trustees. Payment shall constitute a debt due and owing to S.E.C.A. on the last day of each calendar month. Failure to remit the amount due timely will be considered a breach of this Agreement on the part of the individual Employer. Enforcement for delinquent payments to the fund shall be the sole responsibility of the fund or the Employers and not the Local Union. Funds received under this Article shall not be used to the detriment of the Local Union or the I.B.E.W.

## ARTICLE VIII

## LABOR MANAGEMENT COOPERATIVE COMMITTEE (LMCC)

**VIII.1**

the parties agree to participate in the Labor Management Cooperation Committee, or its successor, which is established under the authority of Section 6 (b) of the Labor Management Cooperation Act of 1978, 29 USC S175(a) and S302(c)(9) of the Taft-Hartly Act, 29 USC S186(c)(9). The purposes of this committee are:

1. to improve communications between representatives of Labor and Management;
2. to provide Employees and Employers with opportunities to study and explore new and innovative joint approaches to achieving organizational effectiveness;
3. to assist Employees and Employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;
4. to study and explore ways of eliminating potential problems, which reduce the competitiveness and inhibit the economic development of the construction industry;
5. to enhance the involvement of Employees in making decisions that affect their working lives;
6. to do any and all other lawful activities authorized under the Act.

39

The Committee shall function in accordance with, and as provided in the Labor-Management Cooperation Committee Trust Agreement, and subsequent amendments thereto. Employers making contributions shall be entitled to participate therein, as provided in said Trust Agreement.

## ARTICLE IX

## NLMCC / LMCC

Labor Management Cooperation Committee Trust Fund - effective with hours worked June 1, 2001, all Employers subject to the Agreement shall pay the sum of $.32 per hour for each hour worked by all Employees who perform work covered by the Collective Bargaining Agreement to the Labor Management Cooperation Committee Trust Fund. Hours worked shall be deemed to include straight time hours worked, actual overtime hours, report time and shift premium hours not worked. A remittance report form and the fringe benefit contributions shall be forwarded to reach the designated collector on or before the 15th day following the end of each calendar month. Each Employer hereby accepts and agrees to be bound by the terms and conditions of the Trust Agreement, which governs the Labor Management Cooperation Committee and any amendments thereto. The purpose of the Labor Management Cooperation Committee Trust Fund is to establish, fund and operate joint Labor Management activities sanctioned by the Labor Management Cooperation Act of 1978, 29 U.S.C. & 175(a) and 29 U.S.C. & 186 (c) (9) of the Labor Management Relations Act.

Any contractor contributing to the LMCC will be considered as having fulfilled their obligations to the NLMCC.

### IX.1

The parties agree to participate in the NECA/IBEW National Labor-Management Cooperation Fund, under authority of Section 6(b) of the Labor-Management Cooperation Act of 1978, 29 U.S.C.175(a) and Section 302(c)(9) of the Labor Management Relations Act, 29 U.S.C. 186(c)(9). The purposes of this Fund include the following:

1. to improve communication between representatives of labor and management;
2. to provide workers and Employers with opportunities to study and explore new and innovative joint approaches to achieving organization effectiveness;
3. to assist workers and Employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;
4. to study and explore ways of eliminating potential problems which reduce the competitiveness and inhibit the industry development of the electrical construction industry;
5. to sponsor programs which improve job security, enhance economic and community development, promote the general welfare of the community and the industry;
6. to encourage and support the initiation and operation of similarly constituted local labor-management cooperation committees;
7. to engage in research and development programs concerning various aspects of the industry, including, but not limited to, new technologies, occupational safety and health, labor relations and new methods of improved production;
8. to engage in public education and other programs to expand the economic development of the electrical construction industry;
9. to enhance the involvement of workers in making decisions that affect their working lives; and,
10. to engage in any other lawful activities incidental or related to the accomplishment of these purposes and goals.

The Fund shall function in accordance with, and as provided in, its Agreement and Declaration of Trust, and any amendments thereto and any other of its governing documents. Each Employer hereby accepts, agrees to be bound by, and shall be entitled to participate in the NLMCC, as provided in said Agreement and Declaration of Trust.

Each Employer shall contribute one cent ($.01) per hour worked under this Agreement up to a maximum of 150,000 hours per year. Payment shall be forwarded monthly, in a form and manner prescribed by the Trustees, no later than fifteen (15) calendar days following the last day of the month in which the labor was performed. The Sacramento Electrical Contractors Association Chapter, SECA, or its designee, shall be the collection agent for this Fund.

If an Employer fails to make the required contributions to the Fund, the Trustees shall have the right to take whatever steps are necessary to secure compliance. In the event the Employer is in default the Employer shall be liable for a sum equal to 15% of the delinquent payment, but not less than the sum of twenty dollars ($20.) for each month payment of contributions is delinquent to the Fund; such amount being liquidated damages, and not a penalty, reflecting the reasonable damages incurred by the

Fund due to the delinquency of the payments. Such amount shall be added to and become a part of the contributions due and payable, and the whole amount due shall bear interest at the rate of ten percent (10%) per annum until paid. The Employer shall also be liable for all costs of collecting the payment together with attorney's fees.

## ARTICLE X
## SAFETY

### X.1

There shall be a Joint Safety Committee consisting of three members representing the Employer and three members representing the Union. The duties of this Committee shall be to develop and recommend safe work rules that are equal to or greater than the Standards of Construction as established by the Occupational Safety and Health Act of 1970, or other applicable Federal or State laws. These safe work rules, as recommended by the Committee, shall be submitted to the parties to this Agreement for possible inclusion in this Agreement. Any proposed changes or revisions in these safe work rules shall first be considered by this Committee for their concurrence and recommendations before being negotiated for possible inclusion in this Agreement.

### X.2

It shall also be the function of this Committee to study these safe work rules and recommend their update to the parties to this Agreement for possible inclusion in this Agreement. This Committee shall meet at least once each quarter and also when called by a majority of the current Committee members.

### X.3

Members of the Joint Safety Committee shall be selected by the party they represent. Their term of office shall be three years unless removed by the party they represent. The term of one Employer and one Union representative shall expire each year with successors to be determined in the same manner as the original appointments were made. A Committee member is eligible to succeed himself.

### X.4

Two Journeymen shall work together on all energized circuits of 440 Volts AC or 250 Volts DC, or respective higher voltages. Journeymen shall be used in assisting a Journeyman Wireman while splicing cable.

### X.5

Cable Splicers shall not be required to work on wires or cables when the difference in potentials is over 200 Volts between any two conductors or between any conductor and ground, unless assisted by one Journeyman. In no case shall Cable Splicers be required to work on energized cables carrying in excess of 480 Volt Circuit.

### X.6

No Employees shall be compelled to use a powder-actuated tool. Only qualified Employees shall be permitted to use powder-actuated tools.

The Employer shall furnish hard hats when such are required and shall also furnish proper individual protective gear to Employees engaged in burning and welding operations.

### X.7

The safe work practices that are in effect on utility company property which are more stringent than those in this Agreement shall apply to work, which is performed on that property under the terms of this Agreement.

### X.8

It is the Employer's exclusive responsibility to insure the safety of its Employees and their compliance with these safety rules and standards.

## ARTICLE XI
## SUBSTANCE ABUSE

The dangers and costs which alcohol and other chemical abuses can create in the electrical contracting industry in terms of safety and productivity are significant. The parties to this Agreement resolve to combat chemical abuse in any form and agree that to be effective, programs to eliminate substance impairment should contain a strong rehabilitation component. The parties recognize the Employer's right to adopt and implement a drug and alcohol policy subject to all applicable laws and regulations, procedural safeguards, scientific principles and legitimate interests of privacy and confidentiality. However, the Union reserves the right to negotiate regarding the terms of the Employer's policy before the policy is implemented by the Employer. When drug and alcohol testing is performed, all testing shall be conducted in accordance with procedures outlined in the aforementioned policy.

## XII.4

All electrical work being performed under the terms of this article shall be governed by "Tunnel Safety Orders" and "Electrical Safety Orders" issued by Division of Industrial Safety; and when applicable, "General Order No. 95" issued by State Public Utilities Commission.

pp- opeiu #29 – afl-cio 06-01-04

INSIDE WIREMAN'S AGREEMENT
June 1, 2004 - May 31, 2008

Should any provision of this Agreement be declared illegal by any court of competent jurisdiction, such provisions shall immediately become null and void, leaving the remainder of the Agreement in full force and effect and the parties shall, thereupon, seek to negotiate substitute provisions which are in conformity with the applicable laws.

SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW

Sacramento Electrical Contractors Association, Inc.

Local Union No, 340, IBEW

Dick Nogleberg, President

Frank Albert, President

Fran McDermott, Chapter Manager

A. C. Steelman, Business Manager

DATE: 8-24-04

DATE: 8-24-04

APPROVED

46

47

APPENDIX / 06-01-04

48

## LETTER OF ASSENT - A

In signing this letter of assent, the undersigned firm does hereby authorize [1]    Sacramento Electrical Contractors

- Association, Inc.    as its collective bargaining representative for all matters contained in or pertaining to the

current and any subsequent approved [2]    Inside Wireman    labor agreement between the

, Sacramento Electrical Contractors Association, Inc.    and Local Union [3] 340    IBEW.

In doing so, the undersigned firm agrees to comply with, and be bound by, all of the provisions contained in said current and subsequent approved labor

agreements. This authorization, in compliance with the current approved labor agreement, shall become effective on the ' 8th    day of

July    1997 . It shall remain in effect until terminated by the undersigned employer giving written notice to the

, Sacramento Electrical Contractors Association, Inc.    and to the Local Union at least one hundred

fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement.

The Employer agrees that if a majority of its employees authorize the Local Union to represent them in collective bargaining, the Employer will recognize the Local Union as the NLRA Section 9(a) collective bargaining agent for all employees performing electrical construction work within the jurisdiction of the Local Union on all present and future jobsites.

In accordance with Orders issued by the United States District Court for the District of Maryland on October 10, 1980, in Civil Action HM-77-1302, if the undersigned employer is not a member of the National Electrical Contractors Association, this letter of assent shall not bind the parties to any provision in the above-mentioned agreement requiring payment into the National Electrical Industry Fund, unless the above Orders of Court shall be stayed, reversed on appeal, or otherwise nullified.

SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW

BRIGGS ELECTRIC
[7] Name of Firm

6330 MAIN Ave.
Street Address/P.O. Box Number

ORANGEVALE, CA    95662
City, State (Abbr.) Zip Code

[6] Federal Employer Identification No.:    94-2907690

SIGNED FOR THE EMPLOYER

BY _____
(original signature)

NAME John E Briggs Jr.

TITLE/DATE Owner    7/8/97

APPROVED
INTERNATIONAL OFFICE • I.B.E.W.
AUG 1 9 1997
J. J. Barry, President
This approval does not make the
International a party to this agreement

SIGNED FOR THE UNION [3]    340    IBEW

BY _____
(original signature)

NAME [8]    Chuck Cake

TITLE/DATE    Business Manager 7-8-97

INSTRUCTIONS (All items must be completed in order for assent to be processed)

[1] NAME OF CHAPTER OR ASSOCIATION
Insert full name of NECA Chapter or Contractors Association involved.
[2] TYPE OF AGREEMENT
Insert type of agreement. Example: Inside, Outside Utility, Outside Commercial, Outside Telephone, Residential, Motor Shop, Sign, Tree Trimming, etc. The Local Union must obtain a separate assent to each agreement the employer is assenting to.
[3] LOCAL UNION
Insert Local Union Number.
[4] EFFECTIVE DATE
Insert date that the assent for this employer becomes effective. Do not use agreement date unless that is to be the effective date of this Assent.

[5] EMPLOYER'S NAME & ADDRESS
Print or type Company name & address.

[6] FEDERAL EMPLOYER IDENTIFICATION NO.
Insert the identification number which must appear on all forms filed by the employer with the Internal Revenue Service.

[7] SIGNATURES
[8] SIGNER'S NAME
Print or type the name of the person signing the Letter of Assent. International Office copy must contain actual signatures-not reproduced-of a Company representative as well as a Local Union officer.

A MINIMUM OF FIVE COPIES OF THE JOINT SIGNED ASSENTS MUST BE SENT TO THE INTERNATIONAL OFFICE FOR PROCESSING. AFTER APPROVAL, THE INTERNATIONAL OFFICE WILL RETAIN ONE COPY FOR OUR FILES, FORWARD ONE COPY TO THE IBEW DISTRICT VICE PRESIDENT AND RETURN THREE COPIES TO THE LOCAL UNION OFFICE. THE LOCAL UNION SHALL RETAIN ONE COPY FOR THEIR FILES AND PROVIDE ONE COPY TO THE SIGNATORY EMPLOYER AND ONE COPY TO THE LOCAL NECA CHAPTER.
IMPORTANT: These forms are printed on special paper and no carbon paper is required for duplicate copies. Remove from the pad enough copies of the form for a complete set and complete the form.

AMENDED AGREEMENT AND DECLARATION OF TRUST

SACRAMENTO AREA ELECTRICAL WORKERS

HEALTH AND WELFARE TRUST

This amended Agreement and Declaration of Trust has been entered into this 1st day of January 1982, by and between SACRAMENTO ELECTRICAL CONTRACTORS ASSOCIATION, hereinafter referred to as the "Employer Association", and LOCAL 340 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, hereinafter referred to as the "Union".

WITNESSETH:

WHEREAS, there has been heretofore established, and there now exists the Sacramento Area Electrical Workers Health and Welfare Trust Fund for the purpose of providing certain health and welfare benefits as hereinafter described, and,

WHEREAS, said Trust has existed pursuant to the Agreement and Declaration of Trust executed on October 1, 1981, and,

WHEREAS, it is the desire of the signatory parties hereto to amend said Agreement and Declaration of Trust, so as to incorporate therein all of the amendments heretofore adopted and as need be adopted in order to comply with ERISA, and,

WHEREAS, the Union and the Employer have heretofore entered into a collective bargaining agreement, which is now in effect, and from time to time hereafter, will execute further and additional collective bargaining agreements, and/or

1

EXHIBIT "B"

The acceptance of such subscription agreements shall be entirely discretionary with the Trustees and shall be subject to whatever terms and conditions they may impose.

Section 6. The only individuals who shall be entitled to participate in and receive benefits from the Trust Fund shall be those employees who are described above. It is expected that participating employers will submit contributions only on behalf of such employees. The receipt by the Trust Fund of contributions which may be submitted on behalf of individuals who are not eligible to participate shall not stop the Trustees from declining or terminating the participation of such individuals nor shall it constitute a waiver of any of the provisions of this Article or of the benefit plans.

## ARTICLE IV

### CONTRIBUTIONS TO THE TRUST

Section 1. Contributions shall be paid into the Trust in such manner and at such time and place, and on monthly transmittal reports as the Board of Trustees may prescribe.

Section 2. Contributions to the Trust shall be payable monthly. Said contributions shall be forwarded to a central depository to be designated by the Board of Trustees. Said payments are to continue from month to month subject to the provisions of the collective bargaining agreement.

Section 3. The amount of the contribution shall be such amount as is set forth in the current collective bargaining agreement between the Employer and the Union or the applicable Subscription Agreement. If the amount of the contribution is changed by the collective bargaining agreement, or subscription agreement, the employer shall contribute the changed amount as required by the collective bargaining agreement

or a subscription agreement.

        Section 4.  Each monthly contribution to the Trust shall be made promptly and shall include all Participants covered by this Agreement who shall have worked during the Employer's payroll month and shall be paid on or before the 10th day of the calendar month following the payroll month in which the participant worked.  The parties recognize and acknowledge that the regular and prompt payment of Employer contributions to the Trust is essential to the maintenance of the Trust and is required by ERISA.  As it would be extremely difficult if not impracticable to fix the actual expense and damage to the Trust which would result from the failure of the Employer to pay his contributions in full within the time above provided, the amount of damage to the Trust resulting from any such failure shall be presumed to be the sum of 20 percent of the amount due the Trust Fund for the delinquent period or $20.00, whichever is greater, and annual interest of twelve percent on the amount that is delinquent and liquidated damages that have accrued because of the delinquency or prior delinquencies.  As the Trust loses the investment return it should have received, and incurs additional administrative expenses in the form of letters, telephone calls as well as other collection expenses in the event employers do not make timely contributions, the above liquidated damages have been agreed to.  The Trust is also delayed or prevented from processing claims by employees under the plan and the Trust's collection expenses, loss of return on investments and inability to pay benefits constitute damages arising from an Employer's default in making timely payments.  The amounts specified above shall become due and payable to the Trust by the Employer as liquidated damages and not as a penalty immediately following the date the contribution became delinquent and shall be in addition to the required contribution.  The Trustees may waive payment of

11

all or a part of such liquidated damages in a particular case upon good cause to the Trustees being established.

Section 5. Upon the failure or refusal of any Employer to make the required contributions, the Trustees shall have authority to pay or provide for the payment from the Trust the amount of the health and welfare benefit to the eligible Participants of such delinquent Employer, but the Trustees shall not be obligated either to said Participant or said Employer to make or provide such payments and they shall incur no liability whatsoever, either individually or collectively, for their failure or refusal to do so. In the event such payments are made by the Trustees from the Trust on behalf of a delinquent Employer, the Trust shall be reimbursed by said Employer for such payments and the Trustees shall have the authority to enforce such right of reimbursement.

In the event an Employer is delinquent in paying benefits due hereunder or defaults in his obligation hereunder, and a Participant under this Trust is financially damaged by lost benefits, then the Employer shall be liable not only to pay contributions due and liquidated damages, but shall be liable to the Participant for all financial loss suffered by the Participant due to the Employer's failure to make timely contributions hereunder.

Section 6. Nothing contained herein shall be deemed to authorize or prevent action by the Union against any Employer who is delinquent in his contributions to the Trust. All rights of the Union to refuse to furnish men to any delinquent Employer, or to withdraw Participants from the job of any delinquent Employer, or to strike or take other economic action against a delinquent Employer, shall be determined by the provisions of the collective bargaining agreement and by applicable rules of law, and shall not be deemed affected in any

12

way by this Agreement.

The Trustees shall not be obligated, however, to pursue the collection of delinquent accounts through grievance-arbitration procedures (if any) provided for in the underlying collective bargaining agreement.

Section 7.  The Trustees shall have the right themselves, or through any authorized representative, to audit the books and records of any employer as they may deem necessary in their discretion to determine if all liabilities of such Employer to the Trustees have been paid, and to determine that the correct contributions have been received for all persons for whom such Employer is required to make contributions.  The Employer shall make such books and records available at all reasonable times and places, so that such audits may be conducted.

In the event an Employer's books are audited as above set forth, the Trustees shall have the right to charge said Employer the reasonable costs of said audit, if the audit reveals a delinquency.

Should an Employer refuse or after a reasonable time fail to comply with the request for an audit, the Trustees, in their sole discretion, may initiate any appropriate legal proceedings to obtain a court order compelling such defaulting Employer to submit to such audit.  In such event any and all court costs and fees, including reasonable attorney's fees, incurred by the Trust shall be paid by such defaulting Employer.

Section 8.  To the extent permitted by law, the Trustees, collectively or individually, shall have no liability with respect to the nonpayment of contributions by any employer contributor or other contributor.  The Trustees shall have the power to demand, collect and receive employer contributions and they shall have the power to do all things necessary to collect

13

and receive the contributions due to the Trust under the terms of the collective bargaining agreement, including the institution and prosecution or the intervention in any proceeding at law, equity or in bankruptcy and shall have the right to collect all sums due and owing to the Trust from all persons whatsoever. To the extent permitted by law, the Trustees shall have the power to compromise, settle or release claims or demands in favor of or against the Trust on such terms or conditions as the Trustees may deem desirable.

Section 9. If an employer contributor is delinquent in his payments, and the Trustees file any suit to collect such delinquent contributions, said employer contributor shall pay reasonable expenses incurred by the Trustees in the collection of said delinquent contributions.

Section 10. If an Employer is delinquent on three occasions within any twelve month period, the Board of Trustees may establish the 10th day of the month as that Employer's delinquent date, or may establish an alternate payment schedule for contributions due hereunder that the Trustee's in their sole discretion believe are appropriate.

Section 11. The Trustees shall have the authority to adopt rules by the terms of which refunds of contributions may be made to a participating employer or employee where the employer or the employee has paid such contributions in error, provided that employer refunds shall be made only as permitted by Section 403(c) of the Employee Retirement Income Security Act of 1974.

## ARTICLE V

### BOARD OF TRUSTEES

Section 1. The Trust Fund shall be administered by a Board of Trustees which shall consist of six (6) Trustees.

14

IN WITNESS WHEREOF, the Employer Association and the Union have executed this amended Agreement and Declaration of Trust as of the day and year first above written.

SACRAMENTO ELECTRICAL CONTRACTORS ASSN.     LOCAL UNION 340, IBEW

_(signatures)_

The undersigned, hereby accept office as Trustees appointed pursuant to the foregoing amended Agreement and Declaration of Trust, and agree to act under and be abject to all of the terms and conditions of said Agreement and Declaration of Trust, including the responsibilities imposed upon Trustees under ERISA, and any other applicable state or federal law. The undersigned hereby declare that they hold the Trust Fund created by said Agreement and Declaration of Trust for the uses and purposes set forth in said Agreement.

EMPLOYER TRUSTEES                    UNION TRUSTEES

_(signatures)_

34